## W. W. WHITE *et al.* v. F. S. SMITH.
### No. 15,694.   (98 Pac. 766.)
#### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Execution Admitted by Pleadings—Evidence of Alteration.* Where in an action on a promissory note the plaintiff attaches to his petition a copy of the note sued on, and the defendants admit the execution thereof, they can not, on the introduction of evidence, be heard to say that the note was changed after its execution. The admission is of the execution of the note in the very form pleaded.

2. ——— *Execution Fraudulently Procured — Parol Evidence.* In such a case, if it be pleaded in defense that the execution of the note was procured through fraud by the plaintiff, parol evidence is admissible to prove such defense; also, if pleaded that at the time the note was signed and delivered by some of the defendants it was agreed that it should be returned if a certain man or number of men did not likewise obligate themselves and sign the note, it may be proved by parol evidence.

Error from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed December 12, 1908. Reversed.

#### STATEMENT.

THIS action was brought by Smith against White and ten others on a promissory note for $550, being one-half the purchase-price of a stallion. The note is non-

negotiable in form, payable to J. D. Smith, and indorsed by him to F. S. Smith. It was signed by the eleven defendants. At the bottom of the note also appeared this sentence: "This note is subject to a contract."

After declaring on the note and setting forth a copy thereof the petition alleged that it was made subject to a contract, a copy of which was attached and marked "Exhibit B," and that all the conditions of the contract had been duly performed by J. D. Smith, for himself and on behalf of the plaintiff. "Exhibit B" was an instrument in the form of a bill of sale and contract of guaranty, purporting to have been signed in the body thereof and before the warranty by eight of the defendants, and not to have been signed by J. D. Smith, or any one for him.

Defendant Wicks answered separately, especially denying that "Exhibit B" was the contract referred to by the words "this note is subject to a contract," and alleging that he wrote those words at the bottom of the note before he signed it, and that they had reference to a written contract executed by the payee, J. D. Smith, by his duly authorized agent, C. A. Skinner, as a part of such note, a copy of which contract was attached to the answer. By the terms of this contract J. D. Smith agreed to release Wicks from the payment of the note or any part of it if demand therefor should be made within eleven months from the date of the note. Thereafter plaintiff dismissed the action as to Wicks.

The other ten defendants afterward filed their second amended joint answer, in which, after denying generally all matters in the petition not expressly admitted, they alleged in substance that the note sued on, with another for the same amount, was given for the purchase-price of a stallion, which was falsely and fraudulently represented by the payee of the note to be an English Shire draft stallion; also, that the pedigree

7—79 KAN.

and reproductive qualities of the horse were falsely represented, and were warranted to be as represented. They further alleged that there had been a breach of the warranty, and that they had tendered a return of the horse upon the discovery of the facts; that they had been induced to sign the note relying upon the representation of J. D. Smith or his agent that Wicks had taken or would take a share in the horse and had signed or would sign the note, and would thereby be jointly and severally bound with them for the payment of the same, while in fact Wicks had been released at all times since the execution of the note and contract, and had not been bound or held for the payment of any sum whatever. This answer is very lengthy, and many matters are pleaded therein to which we do not find it necessary to refer, but upon some of them comment will be made in the opinion.

The plaintiff replied by a general denial.

*James T. Herrick, Harold W. Herrick,* and *W. T. McBride,* for plaintiffs in error.

*W. W. Schwinn,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This case has been in this court before, and upon the same pleadings (*Smith v. White,* 73 Kan. 607, 85 Pac. 588). On the first trial, which was without a jury, the cause was submitted to the court upon the plaintiff's petition and his oral opening statement. It was stated in the opinion in that case:

"All facts pleaded as defenses were denied, and there was no evidence offered to sustain any of them. The only fact admitted by the plaintiff was that he had entered into the written agreement to release Wicks, and it must have been concluded by the court that the voluntary release of one maker of a promissory note by the payee will, in law, operate as a release of all makers." (Page 608.)

The court below having rendered judgment for the

defendants upon this misapprehension of the law, the judgment was in this court reversed, and on that ground alone.

The answer alleged that the contract between Wicks and the plaintiff was made at the time Wicks signed the note, although the copy of the contract attached to the answer is dated two days after the date of the note. It will be observed that on the first trial the plaintiff's attorney did not admit this allegation of the answer, and in the absence of any proof this court of course assumed that the contract of release was in fact made at the time it was dated, subsequent to the execution of the note, and was in fact, as it purported to be, the release of one of the joint-and-several obligors, and that such release did not operate to release all of the obligors except as to their proper proportion of the debt, as provided in section 1194 of the General Statutes of 1901.

On the second trial a jury was impaneled, and the defendants' attorney in his statement to the jury said that he expected to prove that the contract of release between Wicks and Smith was made at the very time Wicks signed the note, so that Wicks in fact never became a maker or joint obligor on the note. Objection was made to this statement, and the court in ruling thereon said:

"Well, in the judgment of the court the answer shows the release of Wicks to have been a matter occurring subsequent to the execution of the note, if that would be a defense at all, and the answer is not sufficient to entitle the defendants to make such proof, and the statement is not to be admitted."

In this we think the court erred to the prejudice of the defendants. The defendants in setting forth the contract were not bound by the respective dates of the note and contract, and they expressly pleaded that the note dated two days previously was signed by Wicks on the day that the contract was made and dated.

This error was repeated in the introduction of evi-

dence. The plaintiff, having introduced in evidence the note, and also the paper called a contract, marked "Exhibit B" and attached to the petition, the purport of which is set forth in the statement of the case, rested his case. Thereupon the defendants, among others, introduced Wicks as a witness and asked him whether or not he had an understanding with J. D. Smith's agent concerning his liability in case he should take a share in the horse. An objection by the plaintiff was sustained by the court. The defendants then offered to prove by Wicks that the agent, at the time he asked Wicks to take a share in the horse, stated that if Wicks would sign his name to the note he (the agent) would give Wicks a private and written contract, by which he was to be held harmless and not to be liable for any money whatever, provided he would give notice that he did not want to be held within eleven months; also, that Wicks and Skinner did thereupon enter into the written contract, and at the same time, and before signing the note, Wicks wrote in the note the words "this note is subject to a contract," and that these words referred to the last-named contract, and not to "Exhibit B," attached to the petition. All this offered proof was objected to by the plaintiff and the objection sustained by the court. The defendants also offered to prove by Wicks that he never made mention to the other defendants of the fact that he held the secret contract until after this case was called in court, which offer of proof was also refused on the objection of the plaintiff. The defendants also offered to prove by a witness, Ready, that he heard a conversation between the agent and defendant Dodson at the time Dodson was solicited to take an interest in the horse and sign the note, and that Dodson said to the agent, Skinner, that he would not take any interest in the horse until Mr. Wicks did, and that Skinner then said that he was going out to Wicks's and would have him sign the note and contract, and if Wicks did not sign the note it

would be returned to Dodson and not be delivered. This evidence was also excluded on the objection of the plaintiff. This, also, we think was prejudicial error.

The name of Wallace W. Wicks appears next to the last signature on the note pleaded, and we are not to be understood as saying that it would be competent to prove that the words "this note is subject to a contract" were written therein by Wicks after all but one of the defendants had signed the note for the purpose of proving that the note had been changed after it had been signed. The defendants expressly admit in their answer the execution of the note—that is, the execution of the note as pleaded; and they can not be heard to say that these words were not in the note at the time of its execution. In *Kurth v. Bank,* 77 Kan. 475, 94 Pac. 798, 15 L. R. A., n. s., 612, it was said:

"A verified denial of the execution of a promissory note is sufficient to put in issue the execution as well as alterations of indorsements of credits written on the back of the note contemporaneously with its execution and before its delivery." (Syllabus.)

Conversely, it must be said that the admission in an answer of the execution of a promissory note, declared upon and copied in a petition, admits that it was executed as set forth.

Any material alteration in a promissory note, made after its execution and without the consent of the maker, changes the contract, and the maker may well say he never executed it as changed; and this even if the change seems to be for the maker's benefit, as, for instance, changing the interest from a higher to a lower rate.

The evidence offered and excluded tends to prove fraud on the part of the plaintiff in procuring the note, and fraud vitiates all contracts. The proffered evidence tends to prove that defendant Dodson, at least, delivered the note, after signing it, to the agent, Skinner, only on the condition that Wicks should purchase

an interest in the horse and sign the note and become a joint-and-several obligor thereon; also that Wicks affixed his signature to the note under a secret contract, which, while apparently complying with, was an evasion of, the condition. Dodson had the right to impose any condition he pleased to the delivery, and any subterfuge evading such condition was fraudulent.

The same, in substance, may be said with reference to the representations tendered in evidence by which other defendants were induced to sign the note. And it is no answer thereto to say that the defendants were not injured by the alleged subterfuge for the reason that if Wicks had become a party to the transaction, and had become fully obligated on the note, as contemplated, the plaintiff could thereafter have released him from all obligations thereon. Parties are held by the courts to the full performance of their contracts freely and fairly made. On the other hand, a party is not allowed to reap the benefits of a contract procured from another through deception and fraud. This rule applies to non-negotiable promissory notes and to negotiable notes acquired by the indorsee with knowledge of the fraud, as well as to other contracts. (1 Dan. Neg. Inst., 4th ed., § 177, and cases there cited; 8 Cyc. 38; 4 Wig. Ev. § 2410, and cases there cited.)

The judgment is reversed, and the case remanded for a new trial.