No. 24,666.

THE VILAS STATE BANK, *Appellant,* v. J. O. PETERSON, *Appellee.*

### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Induced by False Representations—Plaintiff Not an Innocent Holder in Due Course.* Where the execution of a promissory note is induced by fraudulent representations, a purchaser of the note with full knowledge of the fraudulent representations cannot recover from the maker thereon.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed July 7, 1923. Affirmed.

*J. T. Cooper,* of Fredonia, *H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the appellant.

*James W. Finley,* of Chanute, for the appellee; *James A. Allen,* and *B. M. Dunham,* both of Chanute, of counsel.

The opinion of the court was delivered by

HARVEY, J.: This is an action upon a promissory note by one claiming to be a holder in due course. The defense was fraud in the inception of the note and that plaintiff had knowledge of the fraud at the time it purchased the note. There was a trial to a jury, verdict and judgment for defendant and the plaintiff has appealed.

Appellant contends that the matters alleged as fraud in the inception of the note, even if assumed to be true, do not amount to fraud so as to make the note defective within the meaning of the negotiable instruments act. (Gen. Stat. 1915, § 6582.) On this feature the evidence showed substantially the following facts: Early in February, 1921, the cashier of the plaintiff bank wrote to the Associated Mill & Elevator Company, of Kansas City, stating that their community was in need of an elevator. Following that, representatives of the elevator company went to Vilas and interviewed a number of farmers and solicited them to subscribe for stock in a proposed elevator to be built there. The officers of the bank took an active interest in soliciting subscriptions, either the cashier or the vice president of the bank accompanied the solicitors for the elevator company to interview the various farmers in the community and solicit their subscriptions. The vice president accompanied the solicitors of the elevator company when the defendant in this case

was solicited. It was represented to the defendant that the plan was to sell 100 shares of stock, at $100 each, to people in the community, and if that number of shares could not be sold the plan would be abandoned and the notes given for shares ,would be returned; that, if the subscriptions were obtained, the elevator would be built in time to handle the wheat crop of 1921, and that 75 shares had then been sold. Defendant contends that these representations were false in that only 64 shares, including the two sold this defendant, were ever sold; that the notes were turned over to the bank when only 60 shares were sold, instead of carrying out the original plan to sell 100 shares, and that the elevator was not built in time for the wheat crop of 1921, and, in fact, never was built. Appellant cites and relies upon *Kiser v. Richardson,* 91 Kan. 812, 139 Pac. 373, where it was held that false representations, in order to be fraudulent, must relate to a present or past state of facts, and that an action will not lie for deceit in failing to perform promises looking to the future, and points out that the promise to build the elevator in time for the wheat crop of 1921, and the further promise that the whole deal would be given up and defendant's note returned if 100 shares could not be sold, related to matters to be done in the future and, hence, could not constitute fraud in the inception of the note. While there is some force to this argument, yet the whole plan of the matter, no doubt, was what induced defendant to sign, and the positive statement, that 75 shares had then been sold, was a representation of a present existing fact, and was, in fact, false, for that number never was sold. As the evidence clearly shows, defendant was induced to sign by the false representations, including the one material false representation that 75 shares had then been sold, it constituted sufficient fraud to make the note defective within the meaning of the statute.

Appellant makes the point that the rule which prohibits the reception of oral testimony to vary the terms of a written instrument applies to promissory notes, citing *Stevens v. Inch,* 98 Kan. 306, 158 Pac. 43, and allied cases. These cases do not apply here. Defendant did not contend that the note should have been worded differently or that it was not intended as a promise to pay. His contention was that his signature thereto was obtained by fraudulent representations and this he was entitled to show by parol evidence. In 22 C. J. 1215 it was said:

"It is well established that as fraud vitiates everything which it touches,

parol evidence is always admissible to show, for the purpose of invalidating the written instrument, that its execution was procured by fraud."

And at page 1217, it was noted that this rule applies to bills and notes, citing *Deming v. Wallace*, 73 Kan. 291, 85 Pac. 139; *White v. Smith*, 79 Kan. 96, 98 Pac. 766, and many other cases.

Appellant further contends that the plaintiff, the bank, had no knowledge of the fraudulent representations, if any were made, at the time it purchased the note, and cites cases to the effect that a corporation is not bound by the acts or knowledge of its officers or agents concerning private enterprises in which the bank is not interested. It will be noted that the active officers of the bank really started the promotion of this elevator enterprise, accompanied the solicitors of the elevator company, were present at the time when the representations were made, and possibly participated in the representations, and that the bank did, in fact, buy these notes procured by such representations, and within a few days after they were executed. The cashier represented the bank in buying the notes, and he had been active in assisting in the sale of the elevator shares and knew all about the representations made. Under those circumstances, the bank cannot be heard to say that it had no knowledge of the manner in which these notes were procured.

Finding no error in the record, the judgment is affirmed.